UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YURIY KRIVOSHEY (A# 071 300 677), | No.  1:26-cv-04341 DJC SCR |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| MARKWAYNE MULLIN, et al., | |
| Respondents. | |

Petitioner is a federal immigration detainee proceeding through counsel with a habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1)(B).

### I.      Factual and Procedural History

Petitioner is a native and citizen of Belarus.  ECF No. 1 at 2, ¶ 4.  Petitioner and his family were granted parole into the United States when he was approximately seven years old.  Id. at 3, ¶ 9.  On or about January 16, 1995, Petitioner's status was adjusted to lawful permanent U.S. residency.  Id.; see also ECF No. 8-1 at 2 (Form I-213).  He has resided in the United States for over 31 years.  Id.

On July 7, 2025, Petitioner was arrested for DUI and related probation violations under Florida state law.  ECF No. 8-2 at 22-23.  On or about July 18, 2025, Immigration and Customs Enforcement ("ICE") arrested Petitioner and issued him a Notice to Appear ("NTA") charging

1

him as removable under 8 U.S.C. § 1227(a)(2)(B)(i) due to a 2017 conviction for possession of more than 20 grams of cannabis, Fla. Stat. § 893.13(6)(a).  ECF No. 8-3 (NTA); ECF No. 8-2 at 16 (FBI "Rap" sheet).  On November 21, 2025, an immigration judge ("IJ") ordered Petitioner removed to Belarus but granted Petitioner's application for withholding of removal under 8 U.S.C. § 1231(b)(3).  ECF No. 8-3 at 8-11.  Both Petitioner and the government waived appeal. Id. at 11.  Petitioner remains in immigration detention at the California City Correctional Facility within this judicial district.  ECF No. 1 at 2, ¶ 4.

Petitioner filed the instant § 2241 petition on June 8, 2026, alleging that his prolonged and indefinite detention violates the Due Process Clause of the Fifth Amendment and Zadvydas v. Davis, 533 U.S. 678 (2001).[1]  ECF No. 1 at 5.  By way of relief, he seeks a declaration that his continued detention violates the Fifth Amendment and his immediate release.  Id.

In their response to the petition, Respondents acknowledge that Petitioner's detention has exceeded Zadvydas' presumptively reasonable, six-month duration and that "the Government has not at this moment demonstrated that removal will occur in the immediate future."  ECF No. 8 at 3-4.  However, Respondents assert that "the delays in executing the removal order are attributable entirely to Petitioner's own obstructive conduct, thereby justifying continued detention beyond six months."  Id.  Specifically, Respondents claim that Petitioner has refused to participate in "identity verification, travel-document processing, and other required steps," and, as a result, the removal period at 8 U.S.C. § 1231(a)(1)(C) "has not run."  Id. at 4.  To the extent Petitioner is entitled to any relief, Respondents ask that it be limited to supervised release.  Id.

Petitioner filed a reply arguing he has cooperated with the ICE, ECF No. 10, and attached a letter dated February 13, 2026, from his counsel to the assigned Deportation Officer to that effect.  ECF No. 10-1.  Regardless, Petitioner asserts that his cooperation is irrelevant because he cannot be removed to Belarus due to the grant of withholding and Respondents acknowledge they have not identified a third country for his removal.  ECF No. 10 at 2 (citing ECF No. 8 at 2).

---

[1]  Petitioner filed a prior § 2241 petition in the Middle District of Florida on March 13, 2026.  The Court dismissed the petition without prejudice on grounds it was not ripe under Zadvydas. Krivoshey v. Noem, et al., No. 3:26-cv-539 MMH SJH, ECF No. 7 (M.D. Fla. May 6, 2026).

2

## II.    Immigration Detention Framework After a Final Order of Removal

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a).  "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022).  After this 90 day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'"  Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

Petitioner's order of removal became final on November 21, 2025, upon his waiver of appeal.  See 8 C.F.R. § 1003.39 ("[T]he decision of the [IJ] becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first[.]"); 8 C.F.R. § 1241.1(b) (order of removal becomes final "[u]pon waiver of appeal by the respondent").  This shifted his detention to § 1231(a) and triggered the start of the 90-day removal period, which has since lapsed.  Petitioner was ordered removed pursuant to 8 U.S.C. § 1227(a)(2)(B) based on a controlled substance conviction, which is one of the categories of post-removal order discretionary detention.  See 8 U.S.C. § 1231(a)(6) (listing noncitizens removable under Section 1227(a)(1)(C)(i)).  Accordingly, Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6).

The Supreme Court examined the constitutional limits of detention under 8 U.S.C. § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]"  533 U.S. at 692.  Zadvydas read an implicit due process limitation into the immigration statute governing the removal of noncitizens subject to a final order of removal in order to avoid serious constitutional problems.  The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  As a result, "once [a noncitizen's] removal is no longer

3

reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699.[2]  In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six-month period of detention.  Id. at 701.  If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  Id.

### III.    Analysis

The Parties do not dispute that the general prerequisites for relief under Zadvydas are met. They agree that Petitioner is detained under § 1231(a)(6) and that his detention has exceeded the presumptively reasonable six-month benchmark.  Respondents also acknowledge that removal is not reasonably foreseeable, as "DHS has not identified a third country for Petitioner's removal nor obtained travel documents that would create a more fluid removal process."  ECF No. 8 at 2. Petitioner cannot be removed to Belarus on account of the IJ's grant of withholding of removal. See Johnson v. Guzman Chavez, 594 U.S. 523, 531 (2021) ("If a[] [noncitizen] is granted withholding-only relief, DHS may not remove the [noncitizen] to the country designated in the removal order unless the order of withholding is terminated.") (citations omitted).

Relief then turns on whether Petitioner's alleged noncooperation precludes relief under Zadvydas.  The Ninth Circuit has endorsed reading such a limitation into Zadvydas.  See Pelich v. I.N.S., 329 F.3d 1057, 1060 (9th Cir. 2003) ("We are further persuaded by the district courts that have addressed this issue and concluded that Zadvydas does not save a[ noncitizen] who fails to provide requested documentation to effectuate his removal."); Lema v. I.N.S., 341 F.3d 853, 856 (9th Cir. 2003) ("We hold today, consistent with Zadvydas and Pelich, that when a[] [noncitizen] refuses to cooperate fully and honestly with officials to secure travel documents from a foreign

---

[2]  The undersigned changed "alien" to "noncitizen" throughout these findings and recommendations.  This has become commonplace among jurists at the Supreme Court and Ninth Circuit in recent years.  See Patel v. Garland, 596 U.S. 328 (2022) (Barrett, J.); United States v. Palomar-Santiago, 593 U.S. 321 (2021) (Sotomayor, J.); Barton v. Barr, 590 U.S. 222, 226 n.2 (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.' " (citing 8 U.S.C. § 1101(a)(3))); Avilez v. Garland, 69 F.4th 525 (9th Cir. 2023); Arce v. United States, 899 F.3d 796 (9th Cir. 2018).

government, the [noncitizen] cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future."). In <u>Lema</u>, the Ninth Circuit specifically held that 8 U.S.C. § 1231(a)(1)(C) authorizes the continued mandatory detention of a noncitizen beyond the 90-day removal period "so long as the [noncitizen] fails to cooperate fully and honestly with officials to obtain travel documents." 341 F.3d at 857. Moreover, DHS regulations allow the government to extend the removal period "if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal subject to an order of removal." 8 C.F.R. § 241.4(g)(1)(ii). To do so, the government must issue a "Notice of Failure to Comply" prior to the expiration of the removal period. <u>Id.</u>

Here, Respondents have not put forth any evidence of Petitioner's alleged noncooperation with identify verification, travel-document processing, or other required steps that would justify the government's extension of the § 1231(a)(1)(C) removal period and defeat Petitioner's <u>Zadvydas</u> claim. Respondents' evidence in fact cuts against their assertions of Petitioner's noncooperation with these required steps. Respondents submitted as an exhibit a formal request for travel documents dated March 1, 2026, from Petitioner's Deportation Officer to an unidentified "Consul General" that includes as attachments information for Petitioner's travel document/passport (Form I-217), his Belarusian birth certificate, and biometric information (photo and fingerprints). ECF No. 8-3. If Petitioner has refused to cooperate with ICE since that formal request, Respondents have not explained how or provided any corroborating evidence.

For his part, Petitioner has submitted evidence of his counsel's outreach and offer of cooperation to ICE in February 2026 prior to this request for travel documents. <u>See</u> ECF No. 10-1. Petitioner states that neither he nor his counsel have received a single request regarding assistance with a travel document application from ICE. ECF No. 10 at 2. Nor is there evidence in the record that the government issued Petitioner a "Notice of Failure to Comply" pursuant to 8 C.F.R. § 241.4(g)(1)(ii) prior to the expiration of the removal period. In sum, the undersigned finds no basis in the record for Respondents' assertion of Petitioner's noncooperation or any other grounds that would defeat Petitioner's entitlement to relief under <u>Zadvydas.</u>

For all of these reasons, the undersigned recommends that the § 2241 petition be granted and Respondents be ordered to release Petitioner immediately.  Respondents may place Petitioner on the same conditions of supervision in place prior to his re-detention in July 2025.  See Zadvydas, 533 U.S. at 700 (holding that a noncitizen's release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.     Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED.

2.     Respondents be directed to immediately release Petitioner YURIY KRIVOSHEY (A# 071-300-677) on the same conditions of release in place at the time of his re-detention in July 2025.

3.     Respondent be directed to file a notice of compliance within three (3) days of any order adopting these findings and recommendations.

4.     The Clerk of the Court be directed to:

a.  Serve the California City Correctional Facility with a copy of any order of release; and

b.  Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties

////

////

are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 10, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

7